UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JON CRYER,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>*Defendant*. | Civil Action No. 22-0041 (FYP) |

## JOINT STATUS REPORT

Pursuant to the Court's March 2, 2022 Minute Order, Defendant National Archives and Records Administration ("NARA" or "Agency") and Plaintiff Jon Cryer ("Plaintiff") submit this Joint Status Report.

### BACKGROUND

1. The Complaint in this action is brought under the Freedom of Information Act ("FOIA") and concerns a FOIA request submitted by Plaintiff to NARA regarding records related to Peter Nivens Kiger and the War Resisters League.

### CURRENT STATUS OF PROCESSING

2. The search for records responsive to the FOIA request has been completed. The records responsive to the request total approximately 641 pages.

3. On or about March 22, 2022, Defendant issued an interim response to the FOIA request.

4. Defendant has determined that some of the records responsive to the FOIA request are marked as containing classified national security information. To assess the records for potential declassification, Defendant will need to consult with other federal agencies that have original classification authority. Defendant has already begun the consultation

process. Defendant cannot provide an estimated date for its next production because Defendant has no control over when a third-party will provide a response to Defendant's inquiries or finish processing records on which it is asked to consult.

5.  Defendant does not intend to seek an *Open America* stay.

6.  The parties have not yet determined whether a *Vaughn* index will be required, as the final interim FOIA response has not yet been issued.

## ISSUES RELATED TO PRODUCTION AND THE PARTIES' POSITIONS

**PLAINTIFF'S POSITION**

7.  Plaintiff objects to the open-ended nature of the consultation process. For one thing, the Defendant should publicly identify those federal agencies that allegedly have equities in the requested information. See Executive Order 13,526, §3.6. Additionally, and more importantly, a consultation (or referral if it becomes one) does not relieve the Defendant of its legal obligation to timely process and release non-exempt materials. That this may be a new factual development for the Defendant is irrelevant. This is a legal disaster in the making, and one that respectfully should be addressed upfront by the Court rather than at a later time. See e.g., Hall v. CIA, 668 F. Supp. 2d 172, 182 (D.D.C. 2010)(instructing agency to "take affirmative steps to ensure that its referrals are being processed"); Schoenman v. FBI, 604 F. Supp. 2d 174, 203-04 (D.D.C. 2009)(requiring agency to submit a "comprehensive" Vaughn Index that will include "a complete accounting of all referrals made and indicate whether all documents so referred have been processed and released to Plaintiff"); Williams v. United States, 932 F. Supp. 354, 357 & n.7 (D.D.C. 1996)(urging agency to set up an "express lane" for referred records so as to not "tie up other agencies by taking an inordinate period of time to review referred records [and] unnecessarily

inhibit[ing] the smooth functioning of the [other] agencies' well[-]oiled FOIA processing systems"). See also Plunkett v. DOJ, 202 F. Supp. 3d 59, 63 (D.D.C. 2016)(denying summary judgment where court "cannot discern what happened to [certain referred] materials"); Skinner v. DOJ, 744 F. Supp. 2d 185, 216 (D.D.C. 2010)(denying summary judgment in part "[b]ecause the results of the [agency's] referral of records to [two agencies] have not been explained"). [FOIA] referral procedures have been held to be consistent with FOIA as long as the referral does not significantly impair the requester's ability to obtain the records or significantly increase the amount of time the requester must wait to obtain the records. Int'l Refugee Assistance Project, Inc. v. United States Citizenship & Immigration Servs., 2021 U.S. Dist. LEXIS 136984, *40 (S.D.N.Y. Jul. 22, 2021), citing McGehee v. Central Intelligence Agency, 697 F.2d 1095, 1110 (D.C. Cir. 1983); see also Unrow Human Rights Impact Litig. Clinic. v. Dep't of State, 134 F. Supp. 3d 263, 280 (D.D.C. 2015) (noting relevant McGehee factors such as whether the originating agency demonstrated an intent to control the records and whether the referral was *prompt and public*)(emphasis added).

8. Most importantly, courts "have rejected 'the notion that the decision of practicability is to be determined solely by the agency.'" Nat'l Pub. Radio v. Dep't of the Treasury, 2021 U.S. Dist. LEXIS 90170, *6 (D.D.C. Mar. 31, 2021), quoting Elec. Priv. Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30, 38 (D.D.C. 2006)). This Court has "the authority 'to impose concrete deadlines on agencies that delay the processing of requests meriting expedition,'" Id. As the agency that received the Plaintiff's request, the Defendant "is ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request." Plunkett v. Dep't of Justice, 924 F. Supp. 2d 289, 305 (D.D.C.

2013). The Defendant "is not absolved of its obligations under FOIA" to timely produce the requested records solely because it has "refer[red] the documents elsewhere" for consultation. See Keys v. Dep't of Homeland Security, 570 F. Supp. 2d 59, 70 (D.D.C. 2008); see also Plunkett, 924 F. Supp. 2d at 305 (consultation process does not excuse production of records if "net effect" is "significantly to increase the amount of time [plaintiff] must wait to obtain them."), quoting Peralta v. U.S. Atty's Office, 136 F.3d 169, 175 (D.C. Cir. 1998).

9. Therefore, the Plaintiff respectfully requests that the Court set a date certain, and suggests on or before May 31, 2022, by which the Defendant must produce all non-exempt portions of the requested records, or alternatively schedule a Status Conference at the Court's earliest convenience to discuss the situation and next steps.

**DEFENDANT'S POSITION**

10. For the reasons discussed below, Defendant respectfully requests that the Court:

    - deny Plaintiff's request for an Order setting May 31, 2022 (or any other date) as a deadline by which the Defendant must produce the non-exempt portions of the remaining requested records;

    - deny Plaintiff's request that the Court set a Status Conference, as there is nothing that would be added by a conference that has not already been stated in this Joint Status Report; and

    - order the parties to submit a Joint Status Report in 45 days—i.e., by May 19, 2022—advising the Court of the status of the processing of the of the consults and providing a proposal for next step.

11. **Response to Statements Regarding Identities of Consulting Agencies** – At this time, because the Agency is still determining the best way to resolve some issues regarding the consults due to sensitivity of the requested records, the Agency has chosen not to disclose what other agencies are involved in the consult process. If the documents are ultimately referred to another agency for full processing, then Defendant will provide additional

information to Plaintiff at that time.[1] While Plaintiff implies that Executive Order 13,562 requires Defendant to publicly identify those federal agencies that have equities in the requested information, this is not accurate. In relevant part, the Executive Order provides that when dealing with a FOIA request that seeks documents "that contain classified information that originated with other agencies or the disclosure of which would affect the interests or activities of other agencies with respect to the classified information," then the agency receiving the FOIA request "<u>shall</u> refer copies of any request and the pertinent documents to the originating agency for processing and <u>may</u>, after consultation with the originating agency, inform any requester of the referral." Executive Order 13,562 at § 3.6 (emphasis added). Consequently, at this time, NARA is under no legal obligation to disclose the identity of the consulting agencies.

12. **<u>Response to Plaintiff's Objections to the Referral Process and Timing</u>** – Plaintiff's objection to the nature of the consultation process does not change the fact that NARA cannot control or determine when a third-party will provide its response to a consult or referral. Notably, however, the consultations in this case only began within the last two weeks and Defendant fully intends to frequently be in contact with the agencies involved in the consultation process to urge them to provide responses as quickly as possible.

While Plaintiff asks this Court to set a May 31, 2022, deadline for the final production, this request ignores that even if the Court enters an Order mandating that NARA produce the records by a certain date, such an Order still does not provide NARA

---

[1] Defendant's FOIA response issued to Plaintiff on March 22, 2022, advised Plaintiff that additional responsive records were under review and consultation with other agencies; however, prior to providing his arguments and objections in a March 30, 2022, revision to the draft Joint Status Report prepared by Defendant, Plaintiff had not advised Defendant of any of his objections, nor did Plaintiff previously ask for the identities of the consulting agencies.

with any authority or power to force the third-party agencies to promptly respond to the consult nor does it give NARA authority to complete the processing of these national security-related documents on its own. Instead, issuance of such an Order merely sets up a situation in which NARA could potentially be sanctioned for conduct outside of its control, and it could potentially provide Plaintiff with a basis it would use to argue eligibility for attorney's fees (which Defendant believes is, at least partly, why Plaintiff has made this request).

Finally, the cases that Plaintiff cites in support of his "legal disaster" theory are inapposite because, as evidenced by the parentheticals Plaintiff provides, the referral-related problems in those cases concerned the fact that the agency receiving the FOIA request did not account for what happened with the records after it referred those records to another agency. In contrast, as previously noted, NARA has no intention of simply sending the referrals to other agencies without following up with those agencies and ensuring processing of the records is completed.

| | |
|---|---|
| Dated: April 4, 2022 | Respectfully submitted, |
| /s/Mark S. Zaid, Esq. | MATTHEW M. GRAVES |
| MARK S. ZAID | D.C. Bar No. 481052 |
| D.C. Bar No. 440532 | United States Attorney |
| BRADLEY P. MOSS | |
| D.C. Bar No. 975905 | BRIAN P. HUDAK |
| Mark S. Zaid, P.C. | Acting Chief, Civil Division |
| 1250 Connecticut Avenue, N.W. | |
| Suite 700 | By: /s/ April Denise Seabrook |
| Washington, D.C. 20036 | APRIL DENISE SEABROOK |
| (202) 454-2809 (telephone) | D.C. Bar No. 993730 |
| (202) 330-5610 (facsimile) | Assistant United States Attorney |
| Mark@MarkZaid.com | 555 4th Street, N.W. |
| Brad@MarkZaid.com | Washington, D.C. 20530 |
| | (202) 252-2525 (telephone) |
| | (202) 252-2590 (facsimile) |
| *Counsel for Plaintiff* | |
| | *Counsel for Defendant* |